UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  S1-4:19CR0583 SRC |
| | ) | |
| KYLE GREEN, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

Comes now the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Colleen Lang, Assistant United States Attorney for said District, and files its response to the defendant's sentencing memorandum:

On December 4, 2020, the Defendant will plead guilty to Count Two of the superseding indictment, the crime of Attempted Receipt of Child Pornography and Count Three of the superseding indictment, a violation of Travel with Intent to Engage in Illicit Sexual Conduct. Both parties agreed that in exchange of the defendant's guilty to plea to the superseding indictment, the original charge in Count One of Attempted Enticement of a Minor, Title 18 U.S.C. Section 2422(b) would be dismissed.  The defendant's Total Offense Level is twenty-five (25).   There was no joint recommendation as to sentencing.

The Government respectfully requests that the Court sentence the defendant to a sentence of eighty-four (84) months in prison.  This sentence is slightly above the current guideline

1

sentence, however, based on the nature and circumstances of the crime, the government believes

it is appropriate.

## A.    The Nature and Circumstances of the Offense

As the Court is aware from the facts outlined in the plea agreement and in the pre-sentence

report, the charges stem from an undercover investigation by St. Louis County Police in

December of 2018. The defendant responded to an ad placed by an undercover detective on a

social media application. The defendant and the undercover detective, who was pretending to be

an adult female with a fourteen-year old daughter, chatted about incest and the conversation

progressed. Defendant Green ultimately asked to meet the minor daughter at a hotel and stated he

would bring condoms.  Further, Green asked for photographs of the minor child, specifically

requesting a photograph that depicted, "boobs, butt, pussy, Spread."  The undercover sent Green

corrupt files designed not open, but Green attempted to open them believing that the files

contained produced child pornography of a minor fourteen-year old girl.  Just days after the

initial online chat, Green drove from Illinois to a Brentwood, Missouri hotel to have sex with the

minor child. When he arrived at the hotel, Green physically received a thumb drive that he

believed contained the child pornography that Green had requested from the undercover officer.

Green was arrested by the police and interviewed. His cell phone was also subsequently searched

and contained numerous links to cloud-storage accounts (i.e. Dropbox and Mega accounts)

containing child pornography.

Even after being arrested in December of 2018 for attempting to entice a minor online into

illegal sexual conduct, Green was caught online again in June of 2019 trying to meet minor

children. On Saturday, June 29, 2019, O'Fallon, Illinois Police were notified that the group

2

"KTS Predators Hunters" had posted a 21 minute video to Facebook which depicted an incident at a McDonald's in Caseyville, Illinois. "KTS Predator Hunters" are a group of truck drivers, who are not affiliated with law enforcement, that create their own undercover stings online to find adult men looking for children.  In the Facebook video, two adult members of the "KTS Predator Hunters" group describe how they pretended to be a fourteen-year old girl online and had communications with Defendant Green. Green had agreed to come meet two "fourteen year old girls" at McDonalds for some "cuddles, snuggles, and Netflix." It is clear from the video, that it is defendant Green who pulled up to meet the female children, but is instead confronted by members of KTS Predator Hunters.   Shortly after this incident the defendant was indicted in this case and detained .

**B.    History and Characteristics of the Defendant**

According to the Pre-Sentence Investigation report the defendant grew up in a family that was normal. The letters and statements provided by the defense show that his family cared for him and provided him a good life and home.  There is no indication in the presentence report that the defendant suffered any physical or sexual abuse in his formative years.  The defendant did cooperate with police during his initial arrest and government noted that in determining a sentencing recommendation.

The defendant admitting to having struggled with some mental health issues, but it appears his family supported him and provided him treatment for those issues.  Thus, while his mental health issues are a factor to consider when sentencing Green, the government does not believe it is a factor that supports a downward variance in this case.

The defendant argues the United States Sentencing Commission advocates that the

guideline calculations for child pornography offenses are too high.  Green also believes that one specific characteristic of his guideline calculation, Section 2G2.2(b)(6) should not factored because it virtually applies to everyone convicted of the offense. Section 2G2.2(b)(6) adds two levels if the offense involved the use of a computer.  Doc. #61 at 9-11.  In the United States Sentencing Commission's 2012 report[1] (hereafter "Report") several recommendations dealing with Section 2G2.2 were made by the Commission. However, the Commission and Congress ultimately decided to keep Section 2G2.2(b)(6) and even added more enhancements[2] to specific offense characteristics, potentially increasing total offense levels for child pornography offenders. Therefore, Section 2G2.2(b)(6) continues to be applied as written.

The Sentencing Commission also outlined some broad recommendations for revisions to the child pornography guidelines to better reflect the Commission's findings and the present state of the child pornography landscape. *Report,* p. 322.  One of the Commission's recommendations proposed was the following three categories of offender behavior as "the primary factors that should be considered in imposing sentences in § 2G2.2 cases:

> 1) the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained and protected his collection over time, including through the use of sophisticated technology);

---

[1] The Report can be found online at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf. (last accessed on December 1, 2020).

[2] On November 1, 2016, amendments to Section 2G2.1 and 2G2.2 were adopted after the Commission promulgated the amendments to Congress and absent any action by Congress, they become effective by operation of law by November 1st of the year in which the amendments were submitted to Congress. The 2016 amendments added an enhancement for offenses that include images depicting infants and toddlers, Section 2G2.2(b)(4)(B), and added a "generic" distribution enhancement under 2G2.2(3)(F). See 2016 United States Sentencing Commission Sentencing Guidelines Manual, or  https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2016.

       2)      the degree of an offender's engagement with other offenders - in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and

       3)      whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense."

*Report,* p. 320.

The Commission also noted that:

> [t]he presence of aggravating factors from any of these three categories, even without the presence of any aggravating factors from the other two categories, warrants enhanced punishment depending on the degree that aggravating factors from that category are present in a particular case. The presence of aggravating factors from multiple categories generally would warrant a more severe penalty than the presence of aggravating factors from a single category.

*Report,* p. 321.

And while this recommendation, was not specifically adopted, the Commission explained that its first recommended area of amendment was intended to "account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images and other aspects of an offender's collecting behavior reflecting his culpability (*e.g.* the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)." *Id.* at 323.

The defendant argues that the specific offense characteristics included in Sentencing Guideline Section 2G2.2 are too harsh for a majority of offenders.  Doc. #61 at 10-11.  However, in this case, the defendant was not merely possessing child pornography; he was actively looking for a child on internet and he had plans to commit a "hand's on."  It is the type of predatory

conduct listed in the aforementioned third category of aggravating factors above that the Commission believes warrants an enhanced punishment.

Further, the chats the defendant emailed to undercover when the officer was posing as the minor child and the adult mother were very distributing. Final Pre-Sentence Report, Doc. #59 at 5-6. Green stated he was excited to have sex with the minor, and requested the photograph of the minor's genital area. The defendant's actions in this case distinguish him from "an ordinary" receiver of child pornography, and show his predatory nature.  These aggravating factors lead the government to recommend a sentence slightly above the guidelines.

As set forth in the plea agreement, the parties believe that the defendant's Total Offense Level for these crimes is twenty-five (25), however, the parties agreed to dismiss Count One, which carried a mandatory minimum of ten years and a Total Offense level of twenty-seven (27), in exchange for the defendant's plea of guilty to Count Two and, additionally, Count Three, believing that sentencing range was more appropriate based on the nature and circumstances of the crime.  The government believes that a sentence of eighty-four (84) months in prison adequately reflects the seriousness of the offense and provides just punishment for the offense. In making a fair recommendation to the Court, the government has considered all of the material presented by defense counsel, the information contained in the Pre-Sentence Report, and has reviewed the evidence in this case.

**C.**     **Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

Receiving images and videos of the sexual abuse of children is a serious offense and the guidelines reflect the seriousness of the crime.  In this case, the defendant was attempting to receive videos of child pornography that he asked a minor child to provide him.  At the time, he

6

did not know that minor was actually an undercover police officer.  The defendant also had links

on his cell phone for cloud-storage accounts that contained child pornography images.

Due to the defendant's conduct in attempting to receive child pornography images and

the nature of the images the defendant attempted to possess, as well as the his online behavior in

planning sexual contact with a minor, the government believes imprisonment for at least eighty-

four (84) months is appropriate in this case.

**D.      To Afford Adequate Deterrence to Criminal Conduct and  To  Protect the Public
from Further Crimes of the Defendant**

Reasonable yet firm sentences are necessary in these cases to reduce or eliminate the

market for child pornography and to protect children from becoming victims.  As this Court is

aware, the world has moved online. Whether it is gaming, schooling, or even just routine

conversations with relatives, children have to be online to learn and communicate.  However,

the internet and social media have also made it easier for pedophiles to find children.  Online

predators make the internet a dangerous place for children.  Firm prison sentences are necessary

to deter the online enticement of children, as well as, the downloading, and trading of child

pornography.

A sentence of eighty-four (84) months imprisonment followed by a term of life on

supervised release serves as a just deterrent for criminal conduct for this particular defendant.  It also

reasonably assures to protect the public from any further crimes.

**Conclusion**

The government believes that the original charge in this case had too high of mandatory

minimum (10 years in prison) since this case only involved an attempt and a not a real child, the

government agreed to allow the defendant to plead to a lesser charge. However, the government also believes that the defendant's request of sixty (60) months in prison is too low since the defendant was online seeking out a real child to sexually abuse.  The government believes that going above the guideline range is appropriate in this case due to the aggravating factors, i.e.: defendant's request for a produced photograph of child pornography, his willingness to show up a hotel to have a sex with a minor he just recently met online, and the fact the defendant went back online looking for another child after his initial arrest.  While the government's recommendation is higher than the guideline range, these aggravating factors warrant a sentence higher than seventy-one (71) months in prison.  The government believes a sentence of seven (7) years in prison, followed by lifetime supervised release, is in line with similarly situated individuals, and serves as a just deterrent for this defendant.

The Government is requesting that the Court sentence the defendant to eighty-four (84) months in prison.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

   s/ Colleen C. Lang
COLLEEN C. LANG, #56872MO
Assistant United States Attorney
111 S. 10th Street, Room 20.333
St. Louis, Missouri 63l02
(314) 539-2200

8

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by email upon the following:

Justin Gelfand
Attorney for the Defendant

*s/ Colleen C. Lang*
COLLEEN C. LANG, #56872MO
Assistant United States Attorney